J-A09029-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DJUAN OSCEOLA WILLIAMS | : | |
| | : | |
| Appellant | : | No. 952 WDA 2025 |

Appeal from the Judgment of Sentence Entered July 22, 2025
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0003550-2022

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED: JULY 27, 2026**

Djuan Osceola Williams appeals from the judgment of sentence entered following his convictions for three counts each of possession of a controlled substance and possession with intent to deliver a controlled substance ("PWID"), and one count each of possession of a firearm by a prohibited person, possession of drug paraphernalia, and criminal attempt.[1] Williams challenges the denial of his motion to suppress and the sufficiency of the evidence. We affirm.

A confidential source ("CS") acting for the police set up a controlled buy from Williams of two ounces of crystal methamphetamine. Police showed the CS photos that included a photo of Williams, and the CS identified Williams. Police proceeded to the buy location and encountered Williams nearby at a

---

[1] 35 P.S. §§ 780-113(a)(16), (a)(30), 18 Pa.C.S.A. § 6105(a)(1), 35 P.S. § 780-113(a)(32), and 18 Pa.C.S.A. § 901 (a), respectively.

mailbox for 419 Perry Lane ("Perry Lane residence"). When officers approached Williams, he fled and hid inside an abandoned trailer. Officers ultimately arrested Williams and recovered almost two ounces of crystal methamphetamine from a hole in the floor just beneath the area of the trailer where Williams hid.

Officers obtained a search warrant for the Perry Lane residence. The affidavit of probable cause attached to the warrant application stated:

1. Your Affiant, Narcotics Agent Wes Biricocchi is currently employed by the PA Office of Attorney General Bureau of Narcotics. Prior to my employment as a Narcotics Agent with the OAG, I was employed as a Municipal Police Officer with the City of Arnold Police Department for four and a half years. I have received training in drug identification and recognition, handling the drug abuser, and I am also certified in the Narcotics Identification Kit testing procedure. During the past four years I was an active member of the Westmoreland County Drug Task Force. I have conducted drug surveillance, enlisted numerous confidential informants, participated in a large number of drug arrests, drug delivery arrests, drug paraphernalia arrests and participated in numerous drug related search warrants resulting in arrests.

2. As a result of my training, education and experience, your Affiant has extensive knowledge regarding illegal drugs, packaging and concealment methods, the coded language utilized by traffickers, as well as the methods utilized by illegal drug traffickers in the sale and distribution of controlled substances. Your Affiant is familiar with tactics used by narcotic traffickers to elude the efforts of law enforcement while participating in the sale, delivery and acquisition by misrepresentation of illegal and scheduled drugs. Your Affiant is also aware that narcotic traffickers utilize safes and strong boxes to conceal and hide their narcotics and drug proceeds.

3. On April 13, 2022 Agents of the PA Office of Attorney General BNI worked in conjunction with the Westmoreland County Drug Task Force to conduct a buy/bust operation in the Upper Burrell Twp area of Westmoreland County. Agents/Officers worked with a confidential source (CS) to make arrangements to purchase two (2) ounces of crystal methamphetamine from a male knows [sic.] to them as "Chiz." The CS positively identified "Chiz" as Djuan Williams by a photograph. The CI [sic] contacted Williams via text message asking for the two (2) ounces of crystal meth. Williams told the CS "i'm ready." The CS then contacted Williams to set a deal location. Williams instructed the CS to go to Merwin Road off Rt 366. At approximately 17:40 hours, Williams contacted the CS via phone call and stated go to 520 Upper Drennen Road and would be waiting outside.

4. Agents/Officer proceeded to the area of 520 Upper Drennen Rd. Your Affiant observed Djuan Williams AKA Chiz standing at the mailbox getting the mail for 419 Perry Lane (a private driveway) dressed in a red T-shirt, sweatpants and ho[use] slippers. Agents/Officers wearing full POLICE marking and a marked police vehicle approached Williams. Agents advised Williams to stop and show his hands as an emergency siren was activated. Williams immediately fled on foot up Perry Lane to an abandoned mobile home. Williams entered the door to this abandoned residence and continued to the back bedroom closing the door. Williams then exited and surrendered. Agents/Officers conducted a safety sweep of the rear bedroom and located a baggie of crystal methamphetamine (approx. 2 ounces).

5. As Agents/Officers exited the residence contact was made with Brittany Robinson at 419 Perry Lane asking what was going on. Brittany Robinson stated Williams was just with her and did not know why he was under arrest. Robinson who was dressed in only a T-shirt and underwear stated she did not stay at or own the residence but it was her late father's. Robinson refused consent to search the residence for additional narcotics after being advised why Agents/Officers had just arrested Williams.

6. Through your Affiants training and experience as well as the above stated incident avers there to be additional quantities of crystal methamphetamine being concealed within 419 Perry Lane. Your Affiant knows through numerous drug investigations that drug dealers do not carry their full supply of narcotics on their person when making a delivery and it is common to keep the larger quantity of their product stored within a residence to avoid being arrested with their full supply.

Affidavit of Probable Cause, 4/13/22 (verbatim); Commonwealth Exhibit 1.

Officers executing the warrant recovered a firearm from the trailer's oven. They also found fentanyl pills, crystal methamphetamine, $15,200 cash, and a bookbag with Williams' mail inside.[2] The trailer had an open floor plan. The bookbag containing the mail was discovered in the trailer's living room area, which was being used as a bedroom and was adjacent to the kitchen.

After he was charged, Williams moved to suppress all evidence, challenging the search warrant was not supported by probable cause. **See** Omnibus Pre-Trial Suppression Motion, filed 1/26/23. The court held a hearing on the motion and heard testimony from Agent Wes Biricocchi and Officer Robert Haus. The court denied the motion.

Williams proceeded with a jury trial, and at trial, he stipulated that he was prohibited by law from possessing a firearm. The jury convicted him of the above-referenced offenses. The court sentenced Williams to an aggregate term of six to 12 years' incarceration followed by one year of reporting probation. This timely appeal followed.

---

[2] The mail was not addressed to the Perry Lane residence.

- 4 -

Williams raises two issues:

1. Whether the Commonwealth produced sufficient evidence to sustain a conviction for person not to possess a firearm when the firearm in question was located in a separate portion of the residence with the only link to [Williams] being in remote proximity to other contraband?

2. Whether the Court of Common Pleas erred in denying [Williams'] suppression motion when the search warrant relied on information provided by an unreliable confidential informant and the warrant lacked a sufficient nexus between the alleged crimes and the residence at 419 Perry Lane?

Williams' Br. at 3.

Williams first alleges that the evidence was insufficient to sustain his conviction for persons not to possess a firearm. He claims that the Commonwealth failed to meet its burden to prove his constructive possession of the weapon. He maintains that "[e]ven with all inferences drawn in favor of the Commonwealth," the jury's verdict was based on speculation. *Id.* at 10. Williams notes that the firearm was located inside an oven and separate from the drug evidence found in the home. He argues that "the Commonwealth provided no evidence he knew the firearm was present or was the person who placed it there[.]" *Id.* at 11. Williams also points out that there is no DNA evidence linking him to the firearm because the Commonwealth did not order forensic testing of the weapon.

Our standard of review when reviewing a challenge to the sufficiency of the evidence is settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 186 A.3d 985, 990–91 (Pa.Super. 2018) (citation omitted).

The crime of persons not to possess firearms prohibits any person who has been convicted of an enumerated offense or whose conduct meets specified criteria from possessing a firearm in this Commonwealth. *See* 18 Pa.C.S.A. § 6105(a); *Commonwealth v. Miklos*, 159 A.3d 962, 967 (Pa.Super. 2017).

Williams challenges the sufficiency of the evidence to prove possession. Possession may be actual or constructive. *See Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa.Super. 2018). Constructive possession is defined as "conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control." *Id.* (internal quotation

marks and citation omitted). "[T]he Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue." ***Parrish***, 191 A.3d at 37. "[K]knowledge of the existence and location of the contraband is a necessary prerequisite" to proving constructive possession. ***Id.*** "The requisite knowledge and intent may be inferred from the totality of the circumstances." ***Commonwealth v. McClellan***, 178 A.3d 874, 878 (2018) (citation omitted). However, "[i]f the only inference that the fact finder can make from the facts is a suspicion of possession," the Commonwealth has not met its burden to establish constructive possession. ***Parrish***, 191 A.3d at 37. A defendant's mere presence in a place and access to the area where contraband was found is insufficient to prove the defendant had exercise and control of the contraband, in cases where more than one person had equal access to the contraband. ***See Commonwealth v. Ocasio***, 619 A.2d 352, 354 (Pa.Super. 1993).

Here, the jury could have inferred Williams' knowledge and intent from the totality of the circumstances. In his testimony, Agent Biricocchi explained that the trailer had an "open floor plan" and the living room was adjacent to the kitchen:

> You walked in through the front door. To the right was the kitchen area. It was an open floor plan, the kitchen and what should have been a living room with a bed in it, so it was their - - basically their second bedroom.

> We considered it bedroom one because it was the most livable appearing room. Setup was similar as the other trailer.
>
> You went past that living room area down a small hallway, a bathroom on the right and then a secondary bedroom at the end.

N.T., 4/8/25, at 64.

He then described the places he found the items recovered from the trailer, including stating the firearm was found in the kitchen inside the oven. He said that in the living room/bedroom, they recovered men's clothing, narcotics, drug paraphernalia, and the bookbag containing Williams' mail. He stated that they discovered cash in the kitchen and under the bathroom sink. **See id.** at 65, 66, 79, 96, 98-100, 103-05.

Viewing the evidence in the light most favorable to the Commonwealth, it was sufficient to prove that Williams constructively possessed the firearm. The testimony that they found the gun in the oven and recovered male clothing and Williams' mail from a living room/second bedroom that was adjacent to the kitchen, in a trailer with an open floor plan, was sufficient to establish constructive possession. The absence of DNA evidence does not undermine our conclusion. Williams' claim is meritless. **See McClellan**, 178 A.3d at 878-80 (affirming judgment of sentence for persons not to possess conviction, where totality of evidence, including DNA analysis of firearm, supported finding of appellant's constructive possession of firearm hidden under futon in the basement).

Next, Williams challenges the denial of his motion to suppress. When reviewing the denial of a suppression motion, we determine "whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Boyd**, 296 A.3d 1270, 1274 (Pa.Super. 2023) (citation omitted). We review the court's legal conclusions *de novo.* Our scope of review for the suppression court's legal conclusions is plenary. **See Commonwealth v. Anderson**, 276 A.3d 282, 292 (Pa.Super. 2022) (*en banc*). For its factual findings, since the Commonwealth succeeded on the suppression motion, we only consider "the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." **Boyd**, 296 A.3d at 1274 (citation omitted). We are bound by the suppression court's factual findings that are supported by the record. **See id.**

A court may issue a search warrant upon a showing of "probable cause supported by one or more affidavits[.]" Pa.R.Crim.P. 203(B). When responding to a motion to suppress, the Commonwealth bears the burden of establishing that the court "had a substantial basis for concluding probable cause existed." **See Commonwealth v. Leed**, 186 A.3d 405, 413 (Pa. 2018). "Probable cause exists where, based upon a totality of the circumstances set forth in the affidavit of probable cause, . . . there is a fair probability that . . . evidence of a crime will be found in a particular place." **Commonwealth v. Fletcher**, 307 A.3d 742, 746 (Pa.Super. 2023) (citation omitted). The totality of circumstances includes "the reliability and veracity of hearsay statements"

within the affidavit. *Id.* (citation omitted). When reviewing the court's decision to issue a search warrant, "[w]e must limit our inquiry to the information within the four corners of the affidavit[.]" ***Commonwealth v. Harlan***, 208 A.3d 497, 505 (Pa.Super. 2019) (citation omitted).

Williams claims that there was no probable cause to search the Perry Lane residence and that there was no nexus between the alleged crime of PWID and the residence. He argues that "there was no independent police corroboration of the tip, nor was there any reference that the C[S] provided accurate information of criminal activity in the past." Williams' Br. at 14. He notes that officers only saw him outside of the property and were not given any information about Williams being inside the residence. Based on these factors, Williams suggests that his case is similar to ***Commonwealth v. Way***, 492 A.2d 1151 (Pa.Super. 1985). Williams argues that, as in ***Way***, there is no nexus here "on the face of the warrant to suggest probable cause exists to search [the Perry Lane residence]." *Id.* at 18. He maintains the court should have therefore suppressed all evidence. *Id.*

The trial court found that there was "substantial evidence supporting the magistrate's decision to issue the warrant." Opinion and Order, filed 12/27/23, at 13.

> [V]iewing the totality of the circumstances as set forth in the Affidavit, there is substantial evidence supporting the magistrate's decision to issue the warrant. First, it appears from the four (4) corners of the Affidavit that Mr. Williams was a methamphetamine dealer, who had just been caught with the product that he was to sell to a CS. Secondly, he was caught after having apparently hidden a substantial

amount of drug, and Biricocchi opined that based on his experience, "drug dealers do not carry their full supply of narcotics on their person when making a delivery, and it is common to keep the larger quantity of their product stored within a residence to avoid being arrested with their full supply." Thirdly, Williams had just been in the home on Perry, evidently with the drug that he ultimately hid in the abandoned trailer. Finally, there was evidence that Ms. Robinson was not being forthright with the officers in an effort to prevent a search of the home. It could not have seemed believable to Biricocchi or to the magistrate that a person coming to the door of a residence in her underwear did not live there or at least stay there. The most logical explanation for this seeming falsehood would be to prevent the officers from making a connection between that house, the arrestee, and her because she knew there was contraband there. These factors did not prove beyond a reasonable doubt that there would be illegal items in the Perry Lane residence. However, they did amount "to a fair probability that contraband or evidence of a crime [would] be found" there.

*Id.* at 13-14. Regarding Williams' suggestion that the instant case is similar to *Way*, the trial court found *Way* distinguishable. It explained, "In *Way*, unlike the present case, there was no implication that Way or another individual was trying to mislead the police into believing that he was not using a residence when he or she clearly was." *Id.* at 14-15. It also noted that Williams directed the CS to a physical location as opposed to a vehicle, and the evidence did not establish that Williams or his co-defendant had or used a vehicle. *Id.* at 14.

The suppression court's factual findings are supported by the record, and we find no error in the court's legal conclusions. As the court concluded, the facts here are distinguishable from *Way*. In *Way*,

> The alleged transaction occurred in a blue van along a country road. After the alleged transaction, police followed the blue van to a driveway of a property at the corner of Douglas Dr. and Glendale Rd. The informant identified appellant as the driver of the blue van. A police source told the affiant that appellant lived at the intersection of Douglas Dr. and Glendale Rd.

492 A.2d at 1154. Way pleaded guilty to three counts of PWID. On appeal, he claimed ineffective assistance of counsel in failing to file a motion to suppress evidence, arguing that the search of his residence was illegal. This Court agreed and concluded that the affidavit for the search of the home did not include sufficient facts to allow a court to conclude that contraband would be found at the residence. *See id.* It explained that "[p]robable cause to believe that a man has committed a crime does not necessarily give rise to probable cause to search his home." *Id.* (citation omitted). Additionally, the Court concluded that the warrant was facially invalid because it lacked facts to show any nexus between the crime and the premises. *Id.* at 1154-55.

The instant case is distinguishable from *Way* in that here, the drug transaction did not take place inside a vehicle but was scheduled to happen at a specific address and Williams was on foot. Furthermore, unlike *Way*, in this case, the affidavit provided the court with sufficient facts to conclude that contraband would be found at the residence. The affidavit established that officers set up a controlled buy with a CS to purchase two ounces of crystal methamphetamine. Williams directed the CS to a particular location, and upon arrival, officers saw nearby Williams checking the mailbox of the Perry Lane residence, wearing a t-shirt, sweatpants, and house slippers. When officers

- 12 -

approached Williams, he immediately fled to another residence, and upon arrest, officers found approximately two ounces of crystal methamphetamine in the trailer from which Williams fled – the same amount as the CS was supposed to buy from Williams. Affidavit of Probable Cause at ¶¶ 3, 4. The affiant, Agent Biricocchi, knew from experience "that drug dealers do not carry their full supply of narcotics on their person when making a delivery and it is come to keep the larger quantity of their product stored within a residence to avoid being arrested with their full supply." *Id.* at ¶ 6. He also spoke with Williams' codefendant, Robinson, who was at the Perry Lane residence and told him that Williams "was just with her." *Id.* at ¶ 5. The totality of the circumstances, including the recovery of the same drug that the CS was scheduled to purchase, officers initially encountering Williams at the mailbox for Perry Lane, and Agent Biricocchi's experience that drug dealers tend to keep larger amounts of narcotics inside a residence, gave the court a sufficient basis to find probable cause.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/27/2026

- 13 -